United States District Court
Southern District of Texas
**ENTERED**
December 24, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| **FORDEL MARKETING, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:25-CV-00157** |
| | § | |
| | § | |
| **MELON CORP., RANJODH BILLAN,** | § | |
| **GURDEEP BILLAN, and RAIPUR** | § | |
| **DABBA TRUST – RANJODH BILLAN,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

This case arises under the Perishable Agricultural Commodities Act ("PACA"), a Depression-era statute designed to protect sellers of perishable produce from delinquent buyers. PACA requires buyers—often brokers who purchase produce from farmers and resell it to grocery stores or restaurants—to hold the produce, or any proceeds or accounts receivable from its sale, in trust for the benefit of unpaid suppliers until those suppliers receive full payment for their produce.

Fordel Marketing, LLC ("Fordel Marketing"), filed this statutory trust enforcement action against Melon Corporation ("Melon Corp.") and several of its officers, alleging that Melon Corp.—a licensed PACA dealer—violated PACA by failing to pay more than $484,000 for produce purchased from Fordel Marketing in 2024. In the months that followed, disputes among Melon Corp., its lender Silo Technologies, Inc. ("Silo

Tech"), and third-party purchaser Costco Wholesale Corporation ("Costco") have complicated the distribution of PACA-trust assets.

Silo Tech, which alleges a Nevada UCC-1 security interest in Melon Corp.'s accounts receivable, now moves to intervene in this PACA proceeding to monitor how the Court classifies and distributes PACA-trust assets while it pursues its UCC-1 claim against Melon Corp. in arbitration. Costco owes Melon Corp. at least $2.7 million for produce it purchased, but it has withheld payment since July 30, 2024, citing concerns about potential double liability for the same funds under both Melon Corp.'s PACA obligations and Silo Tech's asserted lien. The central issue presented by Silo Tech's Motion to Intervene is whether its alleged UCC-1 security interest possesses the same priority as a PACA trust beneficiary's claim, thereby entitling Silo Tech to intervene in the PACA proceeding as a non-PACA claimant and to address the proper characterization of the PACA trust assets. The Court concludes that it does not.

Pending before the Court is Silo Tech's Motion to Intervene as a Matter of Right, or alternatively, under Permissive Intervention, (Dkt. No. 36). For the following reasons, the Court **DENIES** Silo Tech's Motion to Intervene.

## I.    BACKGROUND

On April 7, 2025, Fordel Marketing filed this action under 7 U.S.C. § 499e of PACA, against Defendant Melon Corp. and several of its officers and principals. (Dkt. No. 1). Fordel Marketing alleges that Melon Corp., a licensed PACA dealer, violated PACA by failing to pay at least $484,216.43 in watermelon produce sales between May 24, 2024, and August 1, 2024. (*Id.* at 5). Fordel Marketing seeks relief from the PACA trust created

when Melon Corp. purchased its produce for the unpaid invoices, plus interest and collection costs, including attorney's fees.  (*Id.* at 15–17); 7 U.S.C. § 499e(c).

Meanwhile, in a separate dispute, Silo Tech—a corporation that provides lending and other services—filed a Nevada UCC-1 claim against Melon Corp. in February 2023 for over $7 million.  (Dkt. No. 37 at 3); (Dkt. No. 29–1); (Dkt. No. 48 at 132).  Although Silo Tech released its assignment in Melon Corp.'s accounts receivable in May 2024, (Dkt. No. 29–2), it reasserted its lien against Melon Corp. in July 2024 after encountering its own financial troubles, (Dkt. No. 37 at 3).  On July 30, 2024, Silo Tech sent lien notices and payment demands to Melon Corp.'s customers under Nevada's Uniform Commercial Code § 9-406, (Dkt. No. 29–3), directing them to remit payment to Silo Tech rather than Melon Corp., (Dkt. No. 29-3); (Dkt. No. 37 at 3) ("The letter stated that[] because 'Silo Tech filed a UCC-1 financing statement in the Office of the Secretary of State of Nevada thereby obtaining a perfected security interest in Melon's assets, including its accounts and accounts receivable,' that Costco could 'only satisfy the debt that [Costco] owe[s] Melon [Corp.] by paying Silo Tech.'").[1]  Because of these notices, Costco—a customer of Melon Corp.—has withheld more than $2.7 million from Melon Corp. since July 30, 2024, for produce that it had purchased and accepted without objection.  (Dkt. No. 51 at 2); (Dkt. No. 37 at 4); (Dkt. No. 48 at 9).

---

[1]    Melon Corp.'s president contends that Silo Tech is not the proper UCC-1 lienholder, citing an October 28, 2024, amendment that changed the lienholder's name to "Silo Capital Resources II LLC."  (Dkt. No. 37 at 2).  This dispute, among many other issues between Silo Tech and Melon Corp., is currently pending in arbitration and is not before this Court in this PACA proceeding.

On August 6, 2024, Melon Corp. responded by filing suit against Silo Tech in the Northern District of California, seeking monetary and injunctive relief for alleged interference, unlawful lending, breach of contract, and violations of PACA. (Dkt. No. 29-9); *Melon Corp. v. Silo Technologies, Inc., et al*, No. 5:24-CV-4781 (N.D. Cal.). In that action, Silo Tech moved to compel arbitration while Fordel Marketing sought to intervene, asserting a priority interest in Melon Corp.'s assets as an unpaid produce seller under PACA's trust provisions, 7 U.S.C. § 499e. (Dkt. No. 37 at 4–5). Silo Tech opposed Fordel Marketing's intervention in the California case. (Dkt. No. 46 at 3).

The Northern District of California granted Silo Tech's motion to compel arbitration and denied Fordel Marketing's motion to intervene. (*Id.*). Melon Corp. subsequently sought voluntary dismissal without prejudice of the California action following entry of the arbitration order. (*Id.* at 3-4). After being denied intervention, Fordel Marketing filed this PACA-enforcement action against Melon Corp. (Dkt. No. 1). Despite the dismissal of the California case, Melon Corp. and Silo Tech's dispute has continued. Costco sought clarification of Silo Tech's UCC-1 claim from both Melon Corp. and Silo Tech in September 2024 but received none until Silo Tech reasserted its lien on August 8, 2025. (Dkt. No. 29 at 5); (Dkt. No. 29-19).

On July 29, 2025, this Court entered the Interim Order Establishing a PACA Claims Procedure ("Interim PACA Order") freezing PACA assets and directing PACA buyers, such as Costco, to remit their PACA payables into a PACA-trust account. (Dkt. No. 25). Counsel for Melon Corp. provided written notice of the Interim PACA Order to Costco on August 1, 2025. (Dkt. No. 29 at 1). Silo Tech asserts it never received notice of the

Interim PACA Order.  (Dkt. No. 36 at 3); (Dkt. No. 50 at 2).  By contrast, Defendant Gurdeep Billan, president of Melon Corp., contends that Fordel Marketing provided notice to Silo Tech on August 8, 2025.  (Dkt. No. 37 at 5).  And Melon Corp. alleges that notice was provided on August 11, 2025.  (Dkt. No. 46 at 4).  Costco filed an Objection to this Court's Interim PACA Order on August 11, 2025, as a nonparty, raising concerns about multiple cases—and possible double liability—over the same funds.  (Dkt. No. 29).  Costco does not dispute that it owes money for Melon Corp.'s produce, but it is uncertain who should receive its payables due to Silo Tech's UCC-1 claim.  (*Id.* at 3, 15-16).

On August 15, 2025, Silo Tech initiated arbitration consistent with the California district court's order by filing a complaint with the American Arbitration Association.  (Dkt. No. 46-8).  In that arbitration complaint, Silo Tech alleged—among other claims and its perfected lien in Melon Corp.'s accounts receivable—that Melon Corp. owes it more than $7 million.  (*Id.* at 2–5).

On August 21, 2025, Silo Tech filed a Comment in this action, (Dkt. No. 33), that indicated its support of Costco's Objections to the Interim Order, (Dkt. No. 29), added Silo Tech's own objections to this PACA proceeding, and stated its intentions to intervene in the case.  On September 2, 2025, Silo Tech moved to intervene.  (Dkt. No. 36).  In this Motion to Intervene as a Matter of Right, or alternatively, under Permissive Intervention, Silo Tech at first sought "declaratory and other related relief to determine [its] rights in any and all accounts which are the subject of the Action, including but not limited to those involving [Costco]," and that the Movant "should be heard in the Action and be allowed to assert claims similar [to] those asserted and raised by Costco with respect to

entitlement to accounts Melon claims are due and owing by Costco to Melon." (*Id.* at 5, 7). Silo Tech later clarified during the September 23, 2025 Interim PACA Order Confirmation Hearing ("Confirmation Hearing"), (Dkt. No. 48), and in a Reply to Responses to Motion to Intervene and Supplemental Brief Addressing the Court's Questions filed September 30, 2025, (Dkt. No. 50), that its alleged UCC-1 lien in Melon Corp.'s accounts receivable supports its position to intervene in this PACA proceeding to monitor the "proper asset characterization" of PACA-trust assets, (Dkt. No. 50 at 11).

On December 1, 2025, the California arbitration tribunal held that it has jurisdiction to adjudicate all claims that Silo Tech asserts against Melon Corp. under the lending contracts. (Dkt. No. 66 at 4); (Dkt. No. 66-1 at 6). Most relevant to this PACA proceeding, the arbitration tribunal also found that this Court's Interim PACA Order does not stay those claims because Silo Tech is a lender, not an unpaid produce seller. (Dkt. No. 66 at 4); (Dkt. No. 66-1 at 6).

As of the date of this Order, only six claimants—Fordel Marketing, Honest to Date, LLC ("Honest to Date"), (Dkt. No. 34), PureFresh Sales, Inc. ("PureFresh Sales"), (Dkt. No. 57), High Gate Imports, Inc. ("High Gate Imports"), (Dkt. No. 62), George Perry & Sons, Inc. ("George Perry & Sons"), (Dkt. No. 69), and HC Schmieding Produce Company, Inc. ("HC Schmieding Produce"), (Dkt. No. 70)—have filed a Proof of Claim in this PACA proceeding.[2] Their collective PACA claims total at least $1 million, (Dkt.

---

[2] This does not, of course, preclude additional claimants from asserting PACA claims after the date of this Order and within the filing deadline set by the Court in the Final PACA Order.

Nos. 1, 34, 57, 62, 69, 70), while Melon Corp. has outstanding accounts receivable from

Costco totaling at least $2.7 million, (Dkt. No. 48 at 9); (Dkt. No. 51 at 2).

## II.    LEGAL STANDARD

There are two types of intervention in federal court: intervention as of right and

permissive intervention.  *See* Fed. R. Civ. P. 24.  Rule 24(a) governs interventions as of

right.  If the party seeking intervention has not been given an unconditional right to do

so by federal statute, it must meet four requirements for intervention as of right set out

by Rule 24(a)(2):

> (1) the motion to intervene is timely; (2) the potential
> intervener asserts an interest that is related to the property or
> transaction that forms the basis of the controversy in the case
> into which she seeks to intervene; (3) the disposition of that
> case may impair or impede the potential intervener's ability
> to protect her interest; and (4) the existing parties do not
> adequately represent the potential intervener's interest.

*Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir. 2004).

"Failure to satisfy any one requirement precludes intervention of right."  *Haspel &*

*Davis Milling & Planting Co. v. Bd. of Levee Comm's of the Orleans Levee Dist.*, 493 F.3d 570,

578 (5th Cir. 2007).  However, "[t]he rule 'is to be liberally construed,' with 'doubts

resolved in favor of the proposed intervenor.'" *Entergy Gulf States Louisiana, L.L.C. v. U.S.*

*E.P.A.*, 817 F.3d 198, 203 (5th Cir. 2016) (quoting *In re Lease Oil Antitrust Litig.*, 570 F.3d

244, 248 (5th Cir. 2009)).  This decision is a practical undertaking, considering the

particular facts and circumstances of the case.  *Adam Joseph Resources v. CNA Metals Ltd.*,

919 F.3d 856, 864 (5th Cir. 2019) (citing *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014)).

Rule 24(b) governs permissive interventions.  While the Fifth Circuit generally maintains a "broad policy favoring intervention[,]" *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016), district courts "have complete discretion to allow permissive intervention."  *Quantlab Group, LP v. Dempster*, No. 4:18-CV-02171, 2020 WL 224537, *3 (S.D. Tex. Jan. 15, 2020) (citing *Graham v. Evangeline Par. Sch. Bd.*, 132 F.App'x 507, 513 (5th Cir. 2005)).  Permissive intervention is appropriate when:

> (1) the motion is timely;

> (2) the intervenor's claim or defense and the main action have a question of law or fact in common; and

> (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties.

*Id.* at *3.  Additionally, the Fifth Circuit instructs courts to consider:

> (4) whether the intervenors are adequately represented by other parties, and

> (5) whether they are likely to contribute significantly to the development of the underlying factual issues.

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989).

## III.    DISCUSSION

The Court first addresses Silo Tech's motion to intervene as a matter of right under Rule 24(a)(2).  The Court then evaluates Silo Tech's motion for permissive intervention under Rule 24(b).

## A.    INTERVENTION AS OF RIGHT

Silo Tech argues that it is entitled to intervention as a matter of right under Rule 24(a) because its interests would not be adequately protected otherwise.  (Dkt. No. 36 at 7–8).  Melon Corp. responds that Silo Tech's intervention would be inappropriate in the context of this PACA proceeding because (1) the Motion to Intervene was untimely, (2) Silo Tech has no protectable interest in the PACA trust assets, and (3) Silo Tech's alleged security interest is not impaired where the Movant is already seeking relief in arbitration under an order from another federal district court.  (Dkt. No. 46 at 2, 5–14).  For the following reasons, the Court agrees with Melon Corp. in part. and **DENIES** Silo Tech's Motion to Intervene as of Right.

### 1.    Timeliness

Silo Tech contends that its Motion to Intervene is timely.  It asserts that it did not receive notice of the Interim PACA Order, that it acted promptly upon learning of it, and that because the case is in its early stages, granting intervention would not prejudice the existing parties.  (Dkt. No. 50 at 6–7).  Melon Corp. counters that Silo Tech's Motion is untimely because the Movant failed to file a formal objection before the Interim PACA Order deadline of September 16, 2025, and Silo Tech is already pursuing relief in arbitration under another district court's order.  (Dkt. No. 46 at 6–8).  The Court agrees with Silo Tech that its Motion to Intervene is timely.

When assessing the first requirement of intervention as of right under Rule 24(a) — timeliness — courts conduct a "contextual" analysis where "absolute measures of

timeliness should be ignored." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).

Instead, courts consider the four *Stallworth* timeliness factors:

> (1) The length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene;

> (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case;

> (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and

> (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Id.* (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977)).

In this case, the Court finds that the first and second *Stallworth* considerations weigh in support of a finding of timeliness for Silo Tech's Motion, while the third and fourth considerations weigh against. On balance, and because the second *Stallworth* factor is the most important, *Rotstain v. Mendez*, 986 F.3d 931, 938 (5th Cir. 2021), Silo Tech's Motion meets the first requirement of Rule 24(a)(2) and is timely.

### a.    Length of Delay

"Determining the length of delay requires identifying the starting point." *Rotstain*, 986 F.3d at 937. "Courts should discourage premature intervention [because it] wastes judicial resources." *Espy*, 18 F.3d at 1206. Therefore, the relevant date for assessing timeliness under the first factor is not "the date on which the would-be intervenor became aware of the pendency of the action," but instead when a would-be intervenor "became aware that its interests would no longer be protected by the original parties." *Id.* That is

because a "nonparty movant's awareness of a case's existence says little about whether their interests are protected," and therefore a "court must also look to the actions of the litigants." *United States ex rel. Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 578 (5th Cir. 2023). "The need for intervention is not immediately apparent at the onset of the litigation." *Id.* To start the timeliness clock, "a court would need to observe that the parties were complacent or non-adversarial as to not protect the interests of potential intervenors." *Id.* at 578. However, a would-be intervenor need not know that its interests *will* be adversely affected, but merely that the existing parties no longer protect those interests. *See Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 513 (5th Cir. 2016).

Here, Silo Tech alleges it never received formal notice of the Interim PACA Order, (Dkt. No. 36 at 3), while Defendants maintain that the Movant did on either August 8, 2025, (Dkt. No. 37 at 5), or August 11, 2025, (Dkt. No. 46 at 4). Upon receiving notice, Silo Tech should have recognized that Melon Corp.'s accounts receivable—for which Silo Tech claims a security interest—could be contested in this PACA proceeding by the original parties because of their adversarial relationship with Silo Tech from the previous Northern District of California litigation. There, Melon Corp. voluntarily dismissed the case without prejudice after the Court granted Silo Tech's motion to compel arbitration and denied Fordel Marketing's motion to intervene. (Dkt. No. 46 at 3-4). Once Silo Tech received notice of this Interim PACA Order, it reasonably should have known that the original parties were complacent towards protecting Silo Tech's alleged UCC-1 lien. The question, then, is when did Silo Tech know of this Court's Interim PACA Order?

The Court reasons that Silo Tech at minimum knew of the Interim PACA Order no later than August 21, 2025, when the Movant filed its Comment Regarding Costco Wholesale Corporation's Objections and Response to Interim Order Establishing a PACA Claim Procedure.  (*See* Dkt. No. 33 at 2) ("Silo claims an interest in the funds which are the subject of this Action which are superior, prior and priority interest in and to the receivables of Costco.").  Because of the Movant's and the Defendants' three competing assertions of when Silo Tech received notice of the Interim PACA Order, the Court determines that Silo Tech was aware no later than August 21, 2025, for *Stallworth* timeliness analysis.

In its Comment, Silo Tech as the would-be intervenor "became aware that its interests would no longer be protected by the original parties," *Espy*, 18 F.3d at 1206, when it asserted that "the action is an improper use of [] PACA and is a collusive attempt to collect the Defendants' receivables, get around Silo's rights, and represents an abuse of the court's processes and resources."  (Dkt. No. 33 at 2.).  Silo Tech then filed this Motion to Intervene on September 2, 2025, less than two weeks later.  A period of less than two weeks between the time that Silo Tech became aware that the original parties did not adequately represent its alleged interests and when it filed this Motion to Intervene is a reasonable length of delay consistent with the Fifth Circuit's precedent on timeliness.  *See, e.g.*, *Espy*, 18 F.3d at 1206 (delay of three weeks is timely); *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996) (delays of 37 and 47 days are timely); *John Doe No. 1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001) (delay of one month is timely).

Melon Corp. argues that Silo Tech never formally filed an objection to the Interim PACA Order before the September 16, 2025, deadline, and therefore fails the first *Stallworth* timeliness factor. (Dkt. No. 46 at 2). However, Silo Tech did object through its Comment filed on August 21, 2025, where it stated that it objected to the Interim PACA Order, that it supported Costco's objections filed on August 11, 2025, (Dkt. No. 29), that it called for interpleader under Rule 22 as the appropriate procedural mechanism for resolving the competing claims as opposed to a PACA proceeding, and that it expressed its intentions to intervene in this proceeding to protect its interests in the disputed PACA-trust assets, (*See* Dkt. No. 33). The Court treats Silo Tech's Comment filed on August 21, 2025, as a satisfactory objection to the Interim PACA Order.

Therefore, the Court finds that a delay of less than two weeks is appropriate under the first *Stallworth* factor.

b.    <u>Prejudice to the Original Parties as a Result of Delay</u>

"The second [*Stallworth*] factor is concerned 'only [with] that prejudice [to the original parties] which would result from the would-be intervener's failure to request intervention as soon as he knew or reasonably should have known about his [stake] in the action.'" *Glickman*, 256 F.3d at 378 (quoting *Stallworth*, 558 F.2d at 265). This factor is the "most important consideration." *Rotstain*, 986 F.3d at 938 (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970)). "[C]ourts should ignore the likelihood that intervention may interfere with orderly judicial processes." *Glickman*, 256 F.3d at 378. And "prejudice must be measured by the delay in seeking intervention, not the

inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Espy*, 18 F.3d at 1206.

This second factor weighs in Silo Tech's favor.  It is difficult to determine what harm or prejudice the original parties suffered due to the less-than-two-week period between when Silo Tech became aware of its alleged interests not being adequately protected and when it ultimately filed its Motion to Intervene.  *See Stallworth*, 558 F.2d at 267 ("[I]t is difficult to understand how either the plaintiffs or [defendant] could have been harmed by what was at most less than thirty days 'delay.'").

Therefore, the Court finds the original parties were not prejudiced by Silo Tech's reasonable, less-than-two-week delay to file its Motion to Intervene in this case.

c.   Prejudice to the Would-Be Intervenors

"The third *Stallworth* factor 'focuses on the prejudice the potential intervenor would suffer if not allowed to intervene.'"  *Ross v. Marshall*, 426 F.3d 745, 756 (5th Cir. 2005) (quoting *Glickman*, 256 F.3d at 378–79).  The Fifth Circuit has held that there is no prejudice and therefore "[i]ntervention generally is not appropriate where the applicant can protect its interests and/or recover on its claim through some other means."  *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 526 (5th Cir. 1994) (concluding no prejudice to would-be intervenor who had no rights or claims for district court to adjudicate but sought access to documents subject to protection order while already litigating against party in another federal court); *but see CNA Metals Ltd.*, 919 F.3d at 865–67 (finding prejudice where denying intervention would require would-be intervenor to institute new proceedings at substantial cost in a court unfamiliar with dispute and with questionable jurisdiction,

raising potential statute of limitations and res judicata defenses). But a would-be intervenor may still be prejudiced where the resolution of the current case could limit the relief available in separate future litigation. *See Glickman*, 256 F.3d at 379.

The third *Stallworth* factor weighs against Silo Tech. The Court finds that Silo Tech will not suffer prejudice because it is already pursuing relief on its claims in arbitration consistent with a court order from another district court based on the same factual predicate, and because that arbitration tribunal has asserted jurisdiction over those claims and determined that this Court's Interim PACA Order does not stay them. Silo Tech is pursuing arbitral relief under the arbitration clause governing its contract with Melon Corp. and in accordance with the Northern District of California's order requiring that any disputes arising out of or related to the lending contracts with Melon Corp. "shall be resolved exclusively and finally by binding arbitration." (*See* Dkt. No. 46-7 at 3-4, 8-11, 13). The factual predicate underlying Melon Corp.'s asserted basis for intervention in this PACA proceeding—its claimed UCC interest—is the same for which it is already pursuing relief in arbitration. Moreover, both Silo Tech and Melon Corp. are complying with the Northern District of California's court order compelling arbitration—a motion that Silo Tech sought. *See Melon Corp v. Silo Technologies, et al.*, No. 5:24-CV-4781 (N.D. Cal.); (Dkt. No. 46-7); (Dkt. Nos. 66, 66-1). And the California arbitration tribunal has asserted jurisdiction over the UCC-1 claim and found this Court's Interim PACA Order does not stay those claims in that forum. (Dkt. No. 66-1 at 2–7). The California arbitration is the appropriate forum for Silo Tech to pursue its UCC-1 claim, so Silo Tech must

proceed there.  *See Deus*, 15 F.3d at 526.  Accordingly, Silo Tech is barred from litigating its UCC-1 claim against Melon Corp. in this PACA proceeding.

Finally, Silo Tech does not have an arbitration judgment yet, underscoring the need for it to continue pursuing recovery in that forum.

Additionally, courts place great emphasis on the practical considerations when conducting an analysis under Rule 24(a)(2).  *See CNA Metals Ltd.*, 919 F.3d at 864.  Here, the practical considerations weigh against Silo Tech's intervention in this case.  Silo Tech's central grounds for prejudice are: Should the PACA proceeding continue without its intervention, Silo Tech's future relief from a possible arbitration victory under its UCC-1 claim against Melon Corp. might be limited because Melon Corp. may exhaust the Costco funds.  (Dkt. No. 48 at 21) ("I don't think we have an issue with this Court administering a claims proceeding over valid PACA claims that are listed in this order as long as we have an opportunity to make sure that the claims are valid and the PACA assets are actually PACA assets.  We kind of see this as a two dogs, one bone situation, that there are the PACA claims that have a right and that we have a purported UCC right.").

In this case, based on the Confirmation Hearing and the claimants who have come forward as of the date of this Order, the Court is not concerned with PACA-trust asset dissipation.  (*See* Dkt. No. 48 at 32–33) ("And so the math as far as the PACA assets and the PACA claims just doesn't add up right now.  And it looks like there's going to be a great remainder that either Melon or Silo has an interest in."); (*Id.* at 115–16).  As of September 30, 2025, Costco owes Melon Corp. at least $2.7 million, (Dkt. No. 51 at 2), of which at least $1 million is potentially owed to PACA claimants, Plaintiff Fordel

Marketing, Honest to Date, PureFresh Sales, High Gate Imports, George Perry & Sons, and HC Schmieding Produce. (Dkt. Nos. 1, 34, 57, 62, 69, 70). Accordingly, Melon Corp. should have no difficulty paying these six PACA claimants once this Court adopts the Final PACA Order directing Costco to disburse the PACA assets it has been withholding from Melon Corp. since July 30, 2024, (Dkt. No. 37 at 4). Silo Tech does not contend that it has any rights or obligations in the PACA-trust assets as a PACA claimant. Rather, as it has alleged in the arbitration, Silo Tech accuses Melon Corp. in this case of improper conduct stemming from their lending contracts and loaned funds. (Dkt. No. 46 at 8-11). Those topics are the subject of the arbitration for which Silo Tech is already seeking relief. Silo Tech is a disputed creditor with claims pending in arbitration, and it is attempting to use that same factual predicate to intervene into this PACA proceeding to obtain, in effect, a bondless prelitigation writ of attachment or possession over PACA-trust assets. (Dkt. No. 46 at 19).

As a final consideration, the Court notes that Fordel Marketing's counsel serves as the PACA-trust administrator, a role that helps prevent the kind of prejudice Silo Tech alleges it would suffer from being denied the opportunity to monitor "proper asset characterization" in this PACA proceeding. Silo Tech's oversight concerns stem from its contention that the PACA-trust beneficiaries are disincentivized to object to other trust beneficiaries' claims. (Dkt. No. 48 at 31) ("There's only $1.5 million owed. So the PACA claimants don't have an incentive to challenge the claim. . . . [We] are kind of the only party who, if we were allowed to intervene, would challenge the validity of some of the

PACA claims and of the PACA trust assets."); (Dkt. No. 48 at 123-24). Silo Tech's contention is incorrect.

First, the role of Plaintiff's counsel as the PACA-trust administrator makes it an officer of the Court. Counsel is therefore ordered by the Court to ensure all claimants assert valid PACA-trust claims. And Silo Tech concedes that it has no concerns about the ability of Plaintiff's counsel to oversee the proper administration of the PACA-trust proceeding, which includes the verification of valid PACA claimants. (Dkt. No. 48 at 30–31) ("We are very familiar with Ms. Cobb's firm and the Stokes firm, and we think they will comply with the Court order. If the Court doesn't want to open a separate registry and just instruct the Stoke firm, who is acting as the holder of the PACA trust account, on how to pay, we have no issue with the Stokes firm managing the PACA trust account and being paid for managing the common fund."). Second, Fordel Marketing is incentivized to limit the number and size of valid PACA-trust claims so it can maximize its recovery on its own claim. Third, if the PACA-trust administrator approves an invalid PACA-trust claim, that precedent could later prejudice Fordel Marketing in future PACA proceedings. Thus, these structural safeguards within the PACA framework are sufficient to prevent the monitoring prejudice Silo Tech alleges may occur.

Because (1) Silo Tech is already pursuing relief in arbitration as ordered by the Northern District of California and as assumed by the California arbitration tribunal, (2) nothing in this Court's PACA Order prevents Silo Tech from enforcing its UCC-1 claim against Melon Corp. once the Movant obtains a final arbitration judgment and the PACA-trust beneficiaries are paid, (3) the practical considerations against limiting Silo

Tech's future relief weigh against intervention, and (4) there are procedural safeguards in PACA to protect against the concerns expressed by Silo Tech, the Court finds that Silo Tech will not suffer prejudice from the denial of its intervention in this PACA proceeding. Accordingly, the third *Stallworth* consideration weighs against a finding of timeliness.

d.    <u>Unusual Circumstances</u>

"The last timeliness factor is '[t]he existence of unusual circumstances militating either for or against a determination that the application is timely.'" *Rotstain*, 986 F.3d at 941 (quoting *Stallworth*, 558 F.2d at 266).

Silo Tech's Motion to Intervene presents unusual circumstances for a PACA proceeding. (*See* Dkt. No. 48 at 41) ("I think the one thing the Parties agree on with Your Honor is this is a unique case."). First, Silo Tech's Motion to Intervene is borne largely from litigation that spilled over from proceedings in another federal district court and is now ongoing in arbitration. Second, Silo Tech seeks intervention here despite opposing Fordel Marketing's intervention in the California district court case where Silo Tech was originally a party. Third, Silo Tech effectively asks this Court to engage in an atypical procedural carveout within a PACA proceeding, for which there is little persuasive precedent. *See infra* III(A)(2). And fourth, would-be intervenors in PACA cases are ordinarily PACA claimants asserting direct interests in PACA-trust assets. *See, e.g.*, *Produce Alliance, L.L.C. v. Fresh America Corp.*, No. 3:03-CV-0152, 2003 WL 2154513, at *1 (N.D. Tex. July 8, 2003).

Here, Silo Tech is neither a PACA-trust claimant, nor does it seek to prevent the disbursement of PACA-trust assets to valid PACA-trust claimants. What Silo Tech does

19

seek is to oversee the proceeding to ensure that funds remain once it possibly prevails in arbitration on its UCC-1 claim. Silo Tech's threatened litigation against nonparty Costco over the disbursement of funds owed to Melon Corp. has also further complicated the case, impeding both Fordel Marketing and the Defendants from resolving matters through normal business channels and delaying payment in this PACA proceeding.

Collectively, the Court finds these factors constitute unusual circumstances that weigh against a finding of timeliness.

* * *

In sum, the Court finds that the first and second *Stallworth* considerations support a finding of timeliness. However, the third and fourth *Stallworth* considerations weigh against a finding of timeliness. Still, because the second *Stallworth* consideration is the most important according to the Fifth Circuit, the Court concludes that, on balance, the first and second *Stallworth* considerations tip the scale in Silo Tech's favor. Therefore, Silo Tech's Motion to Intervene meets the first requirement, timeliness, under Rule 24(a)(2).

### 2.    Whether Intervenor's Interest Relates to Property or Transaction

Silo Tech next argues that its UCC-1 security interest in Melon Corp.'s accounts receivable provides it a sufficient interest in this PACA proceeding under Rule 24(a)(2), (Dkt. No. 50 at 7). It claims that this security interest entitles it to monitor the proper characterization of PACA-trust assets. (*Id.* at 11). Melon Corp. responds that as only a secured creditor, Silo Tech does not have an interest in the PACA-trust assets and therefore lacks a legally protectable interest in this proceeding. (Dkt. No. 46 at 14); (Dkt. No. 51 at 7).

20

A movant requesting intervention must show that it has "a direct, substantial, legally protectable interest in the action, meaning 'that the interest be one which the *substantive* law recognizes as belonging to or being owned by the applicant.'" *In re Lease Oil Antitrust Litig.*, 570 F.3d at 250 (emphasis in original) (quoting *Cajun Elec. Power Coop. v. Gulf States Utils., Inc.*, 940 F.2d 117, 119 (5th Cir. 1991)). "[I]t is plain that something more than an economic interest is necessary." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984) (en banc). "[T]he inquiry turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Texas v. United States,* 805 F.3d 653, 657 (5th Cir. 2015). "[A]n intervenor fails to show a sufficient interest when he seeks to intervene solely for ideological, economic, or precedential reasons; that would-be intervenor merely *prefers* one outcome to the other." *Id.* (emphasis in original).

However, economic interests can justify intervention when they are directly related to the litigation. *Wal-Mart Stores, Inc.*, 834 F.3d at 568. But an economic interest is not sufficiently direct when the intervenor's interest would only be vindicated by a separate legal action or when the intervenor's relationship is too removed from the dispute. *Id.* Property interests are almost always adequate, but non-property interests also suffice when they are concrete, personalized, and legally protectable. *See Texas*, 805 F.3d at 658. Ultimately, "[t]his focus on the party's interest is 'primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'" *DeOtte v. State*, 20 F.4th 1055, 1068 (5th Cir. 2021) (quoting *Espy*, 18 F.3d at 1207).

Despite ample opportunity as a nonparty to characterize the nature of its interest in this proceeding through briefing and a hearing—including a Reply clarifying its position, (*see* Dkt. No. 50 at 11)—Silo Tech's legally protectable interest in the action remains unclear. The Court finds that Silo Tech's arguments fail to establish the requisite interest under Rule 24(a)(2)'s second requirement.

Upon questioning from the Court during the Confirmation Hearing, Silo Tech stated its interest in intervening is to: (1) raise awareness to this Court of Silo Tech's UCC position without "trying to be the spoke in the bicycle or the stick in the bicycle spokes" and (2) "to make sure that all the PACA claims are valid, all the PACA assets or purported PACA assets are actually PACA assets, and any excess funds are not . . . circumventing this UCC lien and going to defendants." (Dkt. No. 48 at 14); (*see also* Dkt. No. 48 at 31–32) ("Our fight is really just to make sure that . . . all PACA claims, are valid PACA claims, all assets they are purporting are PACA assets are actually PACA assets . . . . [W]e would just like an opportunity to be able to have some oversight in this process, make sure that . . . [the] fiduciary of the trust account is actually paying PACA claims at the end. And then the remainder[,] . . . [those] funds that are not going to PACA claimants, if the [trust administrator] want[s] to hold that or those [funds] want to go into the registry of the court at the end until the arbitration, or if it's determined that we don't have a UCC claim, then they would go . . . to Melon.").

There are several problems with Silo Tech's alleged interest and the position sought in this PACA proceeding. First, Silo Tech is not a PACA-trust claimant and therefore has no legally protectable interest for intervening in this proceeding as a

produce seller or PACA beneficiary. A legally protectable interest under PACA exists when a claimant seeks to enforce a recognized right to preserved trust assets. Silo Tech, by contrast, asserts only a UCC-1 lien in Melon Corp.'s accounts receivable and has no legal entitlement to the PACA-trust assets as a non-PACA claimant. Fordel Marketing's cause of action seeks to enforce a PACA trust, and within that framework, it is difficult to characterize Silo Tech's asserted interest in this proceeding as anything more than (1) originating from a separate dispute with Melon Corp. that is (2) a contingent, future interest dependent on an uncertain outcome in arbitration. That sort of generalized economic preference in this PACA proceeding emanating from its separate California dispute and contingent on a future outcome in a separate arbitration forum is too attenuated from the "direct" and "substantial" interest required under Rule 24(a)(2).

Second, the Court finds that there is no generalized interest in intervening in a PACA proceeding as an alleged non-PACA lienholder to act as a watchdog policing the characterization and distribution of assets. Such an oversight role is generally reserved for a court-appointed PACA-trust administrator. When asked by this Court during the Confirmation Hearing, Silo Tech conceded that it hoped the PACA claimants would be paid their valid PACA-trust assets. (Dkt. No. 48 at 126) ("And frankly, we agree that if there are valid PACA claims, which it appears Fordel has, and there are valid PACA trust assets, that yes, the growers should be paid through this claim process."); (Dkt. No. 48 at 130) ("And we want to make sure all PACA claimants get paid, and then any funds in excess of the PACA claimants do not go to the defendant, and the status quo remains as it [is] under the UCC."). While the Court appreciates Silo Tech's concern that the PACA

claimants be paid, that does not translate into a legally protectable interest. Therefore, the Court finds that Silo Tech's generalized interest in overseeing the disbursement of PACA-trust assets as an alleged non-PACA lienholder is not a legally protectable interest in a PACA proceeding.

Third, there is little support for Silo Tech's basis for intervention. Silo Tech, as an alleged secured creditor, seeks to monitor which of Melon Corp.'s accounts receivable from Costco are valid PACA trust assets and which are not. It describes such a position as ensuring "proper asset characterization." (Dkt. No. 50 at 11). But there is no precedent for that in this Circuit.

Silo Tech identifies two PACA cases where a court permitted non-PACA creditors with secured interests to intervene in PACA proceedings. *See Eagle Eye Distrib., Inc. v. Ben Parker, Inc.*, No. 3:09-CV-00095-L, 2009 WL 10704859, at *5 (N.D. Tex. Feb. 17, 2009); *Ger-Nis Int'l, LLC v. FJB, Inc.*, No. 1:07-CV-00898, 2007 WL 656851, at *2 (S.D.N.Y. Mar. 1, 2007). In both cases, a legitimate PACA claimant sought injunctive relief to protect trust assets from dissipation due to the precarious financial condition of the defendant produce buyer, which was in severe financial distress and insolvent. *See Eagle Eye Distrib.*, 2009 WL 10704859, at *2 ("Ben Parker is in severe financial jeopardy in that it has: (1) failed to pay; (2) its representative has advised Plaintiff that Ben Parker is unable to pay the debt owed as required under PACA; and (3) Ben Parker has ceased all operations."); *Ger-Nis Int'l, LLC*, 2007 WL 656851, at *2 (citing court's finding of risk that the trust assets will be dissipated given defendant's concession it has "insufficient funds" to pay its unpaid debts and that the defendant faces five other reparations proceedings for non-payment).

In the first case, the defendant had ceased operations; in the second, the record suggests the defendant had likely done so. *See Eagle Eye Distrib.*, 2009 WL 10704859, at *2; Declaration of Nissa Pierson, *Ger-Nis Int'l, LLC v. FJB, Inc.*, No. 1:07-CV-00898 (S.D.N.Y. Mar. 1, 2007), Dkt. No. 4–2 at 6 (citing instances where plaintiff's drivers "observed a lack of activity [by defendant] and are suspicious that it may be terminating its observations"). The courts in those cases permitted intervention of non-PACA creditors to streamline proceedings where the plaintiffs—legitimate PACA claimants—risked not being paid their rightful trust assets, as the defendants were already insolvent and either no longer operating or suspected to be no longer operating. And in *Ger-Nis Int'l, LLC*, the non-PACA creditors that were allowed to intervene ultimately failed to recover anything because they could not show that any non-PACA assets existed. (Dkt. No. 50 at 5 n.1).

Here, while Melon Corp. acknowledges further delay could "push[] [Melon Corp.] into bankruptcy," there is no indication in the record that Melon Corp. is bankrupt or no longer operating. (Dkt. No. 50 at 8) ("At the Hearing, Melon's counsel argued, without evidence, that 'Melon Corp. basically is running on fumes.'"). Although counsel for Melon Corp. confirmed his client's financial difficulties, the Court is unaware of any allegation or suspicion that Melon Corp. has ceased operations, as was true of the defendants in the cases Silo Tech cites. *See Eagle Eye Distrib.*, 2009 WL 10704859, at *2; Declaration of Nissa Pierson, *Ger-Nis Int'l, LLC v. FJB, Inc.*, No. 1:07-CV-00898 (S.D.N.Y. Mar. 1, 2007), Dkt. No. 4–2 at 6. In fact, despite Costco withholding funds owed to Melon Corp. for about a year and a half, the business remains operational, which suggests some degree of durability. And unlike the PACA claimants in Silo Tech's cited cases, the Court

is not concerned that Fordel Marketing or the other PACA claimants will go unpaid from Melon Corp.'s accounts receivable.  (*See* Dkt. No. 48 at 32–33) ("And so the math as far as the PACA assets and the PACA claims just doesn't add up right now.  And it looks like there's going to be a great remainder that either Melon or Silo has an interest in.").  This is a key distinction between Silo Tech's cited cases and this case.

As noted above, *see supra* III(A)(1)(C), the record shows that sufficient PACA-trust assets exist to satisfy all valid claimants that have come forward.  Of the at least $1.5 million[3] in potential debts Melon Corp. owes to its possible PACA claimants first identified in the July 2025 Interim PACA Order, (Dkt. No. 25 at 11), only around $1 million has been claimed by six PACA claimants as of the date of this Order, (Dkt. Nos. 1, 34, 57, 62, 69, 70).  Costco owes Melon Corp. at least $2.7 million, which would leave at least $1.7 million remaining for Melon Corp. after the Defendant pays Fordel Marketing, PureFresh Sales, Honest to Date, High Gate Imports, George Perry & Sons, and HC Schmieding Produce.  Thus, the two cases Silo Tech cites represent narrow exceptions in which courts allowed non-PACA secured creditors to intervene because the defendants were insolvent, had ceased operating or were suspected of having ceased operations, and posed a legitimate risk of dissipation of PACA trust assets.  Those PACA-trust dissipation concerns do not exist here.

---

[3]    This figure represents the only estimated total sum of all possible PACA claimants provided to the Court.  (Dkt. No. 25 at 11); (Dkt. No. 48 at 11) ("At the time back in July, we believe that number was approximately $1.5 million. But that number has grown with the passage of time.  I don't have a current number as far as an accounts payable, but that was the number.").

Further, the Fifth Circuit has held that produce "[s]ellers therefore have a 'superpriority' right that trumps the rights of the buyer's other secured and unsecured creditors." *Matter of Delta Produce, L.P.*, 845 F.3d 609, 613 (5th Cir. 2016) (quoting *Bocchi Americas Assocs. Inc. v. Commerce Fresh Mktg. Inc.*, 515 F.3d 383, 388 (5th Cir. 2008)); *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 417–18 (5th Cir. 2003) (PACA beneficiaries' "claims prime those of other secured and unsecured creditors for the full amount of the claim"); *Euler Hermes N. Am. Ins. Co. v. Mestizos Grp. LLC*, No. 3:22-CV-01127-E, 2023 WL 2230852, at *8 (N.D. Tex. Feb. 24, 2023) (PACA claimants' trust rights "take priority over the interests of all other creditors").

This reasoning is supported by the Fifth Circuit's analysis of the 1976 Packers and Stockyards Act ("PSA") because the PACA trust provisions were modeled after the PSA. *Matter of Delta Produce, L.P.*, 845 F.3d at 613; *see also In re Monterey House, Inc.*, 71 B.R. 244, 246 (Bankr. S.D. Tex. 1986); *In re Fresh Approach, Inc.*, 51 B.R. 412, 419–20 (Bankr. N.D. Tex. 1985); *Consumers Produce Co. v. Volante Wholesale Produce, Inc.*, 16 F.3d 1374, 1382 n.5 (3rd Cir. 1994). For example, in one such case concerning statutory trust priority over UCC claims in the PSA context, *In re Gotham Provision Co.*, 669 F.2d 1000 (5th Cir. 1982), the Fifth Circuit noted:

> [I]f a lender could defeat the [] trust merely by taking a security interest in inventories and receivables, the clear intention of Congress would be thwarted and the trust provision of the Act would be reduced to a nullity. We hold that so long as cash sellers remain unpaid for their livestock sold to a packer [], that packer must hold his inventories, accounts receivable and proceeds derived from cash sales for the benefit of the cash sellers until such time as they are fully paid. Where the packer has given a lender a security interest

> in inventories or receivables that are subject to the [] trust, the unpaid cash sellers have priority over those assets and may recover the proceeds of those receivables to the extent of the outstanding balance on the cash sales.

669 F.2d at 1009–10; (*see also* Dkt. No. 48 at 34).

Here, Silo Tech seeks to impermissibly elevate its UCC claim to impose oversight on a PACA proceeding. If the Court allowed Silo Tech to intervene as an alleged secured creditor to assume such an oversight role, it would elevate Silo Tech's alleged secured interest to equal priority with the PACA claimants' interests. This is because granting Silo Tech's intervention would improperly confer the same procedural and substantive advantages to Silo Tech that are otherwise reserved to true PACA-trust beneficiaries who are the typical intervenors in PACA proceedings. This would blur the distinction between PACA-trust beneficiaries and secured creditors in PACA proceedings, undermine the statutory priority scheme that Congress enacted, and render the PACA statutory trust a "legal nullity" in contravention of congressional intent and Fifth Circuit precedent. *See also C.H. Robinson Co. v. Trust Co. Bank, N.A.*, 952 F.2d 1311, 1315 n.3 (11th Cir. 1992) ("[A]ll trust beneficiaries must be paid in full before any remainder is distributed to secured creditors."); *id.* at 1315–16 ("Although the loss of 'secured' status relative to trust beneficiaries works to the disadvantage of [lenders], they can take this factor into account before lending to PACA trustees . . . . Secured lenders are not guarantors of PACA trusts. Indeed, their 'secured' status is effectively vitiated by PACA in favor of unpaid trust beneficiaries."); *C.H. Robinson Co. v. Alanco Corp.*, 239 F.3d 483, 488 (2d Cir. 2001) ("PACA imposes a 'non-segregated floating trust' on the commodities

and their derivatives, and permits the commingling of trust assets without defeating the trust. . . . Through this trust, the sellers of the commodities maintain a right to recover against the purchasers superior to all creditors, including secured creditors.") (quotation omitted).

Accordingly, Silo Tech fails to meet the second requirement of Rule 24 intervention as of right because it has not sufficiently identified a legally protectable interest in this PACA proceeding.

### 3.    Impairment of Potential Intervenor's Interest

The third requirement of Rule 24(a)(2) is the impairment of the potential intervenor's interest. Silo Tech argues that denying its intervention would impair its interests by potentially limiting its available relief from a future arbitration award and hindering its ability to protect its alleged security interest. (Dkt. No. 50 at 7–8). Melon Corp. responds that Silo Tech's alleged security interest is not impaired where the Movant is already seeking relief in arbitration pursuant to an order from another district court. (Dkt. No. 46 at 2, 5–14).

"The impairment requirement does not demand that the movant be bound by a possible future judgment." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). Therefore, would-be intervenors "do not need to establish that their interests *will* be impaired," but rather "only that the disposition of the action 'may' impair or impede their ability to protect their interests." *Id.* Fifth Circuit precedent "focuses on practical consequences." *CNA Metals Ltd.*, 919 F.3d at 867.

The Court reiterates its analysis under the third *Stallworth* consideration, *see supra* III(A)(1)(C), and finds that Silo Tech would suffer no impairment.  This is especially so given (1) the approximately $1.7 million remaining after Melon Corp. pays the existing PACA claimants, (2) the alternative arbitration forum for Silo Tech where the Movant is currently pursuing its claims against Melon Corp., (3) the oversight provided by the PACA-trust administrator, and (4) the Court's determination that Silo Tech has not established a legally protectable interest in this PACA proceeding under Rule 24(a)(2)'s second requirement.  Accordingly, Silo Tech has failed to satisfy the third Rule 24(a)(2) requirement.

### 4.    Whether Existing Parties Adequately Represent Potential Intervenor's Interest

Silo Tech next argues that the parties do not adequately represent its interests because they seek only to "maximize PACA distributions at the expense of Silo's security interest."  (Dkt. No. 50 at 8).  "The applicant has the burden of demonstrating inadequate representation, but this burden is 'minimal.'"  *Brumfield,* 749 F.3d at 345 (quoting *Espy*, 18 F.3d at 1207).  The applicant "need not show that the representation by existing parties will be, for certain, inadequate."  *Id.*  Rather, the burden "is satisfied if the applicant shows that representation of his interest 'may be' inadequate."  *Haspel & Davis Milling & Planting Co. Ltd.*, 493 F.3d at 578 (quoting *Edwards*, 78 F.3d at 1005).  However, the burden "cannot be treated as so minimal as to write the requirement completely out of the rule."  *Id.*  The Fifth Circuit recognizes two presumptions of adequate representation: (1) when one party is a representative of the absentee by law, and (2) "when the would-be

intervenor has the same ultimate objective as a party to the lawsuit," in which event "the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Edwards*, 78 F.3d at 1005.

Since Silo Tech fails the second and third requirements of Rule 24(a)(2) thereby denying its intervention as of right, the Court need not address the remaining factor of adequate representation. Regardless, because Silo Tech has not shown a valid interest justifying intervention, adequate representation is not needed to protect the illusory interest it claims.

* * *

Silo Tech has failed to meet the second and third requirements of intervention as of right under Rule 24(a)(2). Because failure to satisfy any one requirement under Rule 24(a)(2) precludes intervention of right, the Court **DENIES** Silo Tech's Motion to Intervene as of Right. *Haspel & Davis Milling & Planting Co.*, 493 F.3d at 578.

### B. PERMISSIVE INTERVENTION

Silo Tech argues in the alternative that the Court should grant permissive intervention under Rule 24(b). In response, Melon Corp. adopts its arguments opposing intervention as of right. (Dkt. No. 46 at 16). Melon Corp. further contends that permissive intervention should be denied because granting the Motion would lead to inequitable effects and delay the proceeding in Silo Tech's favor. (*Id.* at 17).

#### 1. <u>Timeliness</u>

Timeliness, the first condition for permissive intervention under Rule 24(b), is analyzed under the same standard as Rule 24(a). *See, e.g., United States ex rel Hernandez v.*

*Team Fin., L.L.C.*, 80 F.4th 571, 578 (5th Cir. 2023); *St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 976 (5th Cir. 2019).

For the same reasons that the Court found this Motion timely under Rule 24(a), it is likewise timely under Rule 24(b).

### 2.    Claim or Defense Sharing Common Question of Law or Fact

Silo Tech generally argues that it has interests in the claims and transactions asserted in this PACA action, which it alleges justify its intervention.  (Dkt. No. 36 at 7). Melon Corp. responds that Silo Tech has failed to allege a claim that shares any commonality of fact or law with Fordel Marketing's PACA-trust enforcement action because Silo Tech is not a PACA creditor.  (Dkt. No. 46 at 15).

In this context, the words "claim or defense" refer to the kinds of claims or defenses that can be raised as part of an actual or impending lawsuit.  This is confirmed by Rule 24(c)'s requirement that a person desiring to intervene must serve a motion stating "the grounds therefor" and must accompany it with "a pleading setting forth the claim or defense for which intervention is sought."  *Diamond v. Charles*, 476 U.S. 54, 76-77, 106 S.Ct. 1697, 1711, 90 L.Ed.2d 48 (1986) (O'Connor, J., concurring).   Permissive intervention plainly requires an interest sufficient to support a legal claim or defense which is "founded upon [that] interest" and which satisfies the Rule's commonality requirement.  *Id.* (quoting *SEC v. U.S. Realty & Improv. Co.*, 310 U.S. 434, 459, 60 S.Ct. 1044, 1055, 84 L.Ed. 1293 (1940)); *see also DeOtte v. Azar*, 332 F.R.D. 173, 186 (N.D. Tex. 2019) (quoting Caleb Nelson, *Intervention*, 106 Va. L. Rev. (2020) ("If [claim and defense] mean the same thing in Rule 24(b) that they mean elsewhere in the Federal Rules of Civil

Procedure, then an outsider cannot use Rule 24(b) to become a party to a case simply because the outsider has a practical stake in the outcome. Instead, the outsider needs to be a proper party to a claim for relief.")).

Here, the Court finds Silo Tech does not assert a claim or defense sharing a common question of law or fact with the main action. The main action before this Court concerns Fordel Marketing's claim, as a produce seller, that Melon Corp. violated PACA as a produce buyer. (*See* Dkt. No. 1). Silo Tech's asserted basis for intervening—though unclear, as alluded to above—appears to be protection of its alleged security interest by monitoring the distribution of PACA-trust assets. As a non-PACA claimant, Silo Tech does not share a legal question with Fordel Marketing, whose claims arise under PACA. Silo Tech's asserted security interest arises under Nevada's UCC, not the PACA statute.

Silo Tech also shares no common question of fact with Fordel Marketing's PACA claim against Melon Corp. "The mere fact that Plaintiff and [Intervenor] are both seeking to recover debts owed by the Defendant does not mean there is 'overlap' in any factual disputes that may arise from their claims." *Hancock Whitney Bank v. MOF-Willows, LLC*, No. 2:25-CV-01152, 2025 WL 2337129, at *10 (E.D. La. Aug. 13, 2025). Here, Silo Tech seeks to recover its alleged security interest against Melon Corp. because of unrelated lending contracts. In contrast, Fordel Marketing seeks to recover its PACA-trust assets from Melon Corp. due to unpaid produce sales to Melon Corp. The two claims are factually distinct.

Accordingly, the Court finds that the second factor of permissive intervention weighs against granting Silo Tech's Motion to Intervene because there is no overlap in fact or law with Fordel Marketing's PACA claim.

### 3.    <u>Undue Delay or Prejudice to Original Parties</u>

Silo Tech next argues that its intervention would not delay or prejudice the original parties in this PACA proceeding.  Rather, in the Movant's view, Silo Tech's intervention would ensure complete adjudication of all competing claims and prevent the need for separate litigation.  (Dkt. No. 50 at 12).  Melon Corp. responds that allowing Silo Tech to intervene while it pursues its claims in arbitration would delay resolution of the PACA proceeding and deprive the PACA-trust beneficiaries of their statutory right to prompt payment.  (Dkt. No. 46 at 17); 7 U.S.C. § 499b(4).  The Court agrees with Melon Corp. and finds that allowing Silo Tech to intervene in this PACA proceeding based on its security interest to oversee "proper asset characterization" of Melon Corp.'s accounts receivable and the PACA-trust funds would create both undue delay and prejudice to the original parties.

First, granting Silo Tech's intervention would unduly delay this PACA proceeding.  The PACA-trust administrator—as an officer of the Court—already scrutinizes each of the PACA claims to verify valid claimants.  And the PACA-trust administrator is structurally incentivized to perform the job well, consistent with Silo Tech's monitoring concerns.  *See supra* II(A)(1)(C).  Therefore, the Court finds that including Silo Tech in this proceeding so that it can engage in its own monitoring distinct

from what the PACA-trust administrator already does is unnecessary, redundant, and would only delay the proceeding further.

Second, in addition to verifying claims under the PACA Order, the PACA-trust administrator would also need to assume supervision over two accounts rather than just the PACA-trust account, which would further delay the proceeding. Under Silo Tech's proposal, the Court would need to engage in an unnecessary additional step of dividing the proceeding into two accounts: one for the PACA-trust assets and the other, as a registry of the court, for those Costco funds leftover after all PACA claimants are paid. (*See* Dkt. No. 48 at 28–34). But supervising two separate accounts would raise trust-administration costs and administrative burdens, thereby increasing prejudice to the original parties and further delaying an already complex proceeding. (Dkt. No. 48 at 47) ("[I]t's putting a greater burden on the administration of the trust to go to the registry of the court to be able to do that, which is going to increase those fees, which I don't think anybody wants in this case."). Silo Tech can still pursue its arbitration judgment against Melon Corp. without the need for a separate registry in this PACA proceeding. And Silo Tech does not even have an favorable final judgment and may never receive one, so the PACA proceeding would functionally be on hold—without Silo Tech first pursuing a writ of garnishment—because the funds would remain in a court registry until Silo Tech obtains a judgment.

Meanwhile, the parties to the PACA proceeding have already experienced hardship due to Costco's payment delay resulting from Silo Tech's actions. Here, Silo Tech's demands against Costco have caused Melon Corp. "to suffer without payment

from Costco for more than fourteen months." (Dkt. No. 46 at 17). Costco currently withholds "almost $3 million" from Melon Corp. as of September 23, 2025. (*Id.*) Consequently, Melon Corp. and Fordel Marketing have been deprived of their prompt payment rights under PACA. (Dkt. No. 46 at 17); 7 U.S.C. § 499b(4). Silo Tech effectively seeks the Court's grant of a prelitigation writ of attachment without a bond, which would freeze PACA-trust assets while Silo Tech pursues its arbitration claims. (Dkt. No. 46 at 17). The Court concludes that this will only delay proper relief to the parties in the PACA proceeding, impose prejudice on the original parties, and violate the protections to produce sellers under PACA.

Therefore, the Court finds that permitting Silo Tech's Motion to Intervene would lead to significant prejudice and undue delay to this PACA proceeding, and weighs against granting permissive intervention.

### 4. <u>Whether Existing Parties Adequately Represent Potential Intervenor's Interest</u>

The Court declines to assess Silo Tech's adequacy of representation by the original parties because the Court has already found that Silo Tech has no legally protectable interest in the proceeding.

### 5. <u>Likelihood to Contribute Significantly to the Development of the Underlying Factual Issues</u>

The Court finds that Silo Tech's intervention in this PACA proceeding would not contribute significantly to the development of the underlying factual issues. Whatever factual issues that may arise due to Silo Tech's intervention have already been uncovered in this proceeding through Silo Tech's extensive briefing and argument at the

36

Confirmation Hearing as a nonparty movant.  Moreover, Silo Tech is unlikely to contribute materially to the factual development of the PACA claims at issue, as it is neither a produce seller nor a produce buyer with a valid interest in the PACA-trust assets.  Accordingly, the Court finds that this final factor weighs against Silo Tech's permissive intervention.

* * *

Even where there might be a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, permissive intervention is "wholly discretionary with the district court."  *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d at 470–71.  Because the Court finds that Silo Tech's claims do not share common questions of law or fact with Fordel Marketing's cause of action, that its intervention would unduly delay and prejudice the original parties, and that the intervention is unlikely to significantly contribute to the development of the PACA proceeding's underlying factual issues, the Court **DENIES** Silo Tech's permissive intervention under Rule 24(b).

## IV.    CONCLUSION

Considering the foregoing analysis, the Court **DENIES** Silo Tech's Motion to Intervene, (Dkt. No. 36).

It is SO ORDERED.

Signed on December 24, 2025.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**